UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TRACI D.,

           Plaintiff,

         v.                                **DECISION AND ORDER**

                                                      20-CV-6594S

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

        1.        Plaintiff Traci D.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff protectively filed her applications with the Social Security Administration on November 17, 2015. Plaintiff alleged disability beginning July 13, 2013, originally due to status-post total right knee replacement; left knee arthritis; obesity; hypertension; history of seizure disorder well controlled on antiepileptic medications; asthma; and borderline intellectual functioning (R.[2] at 18, 692). Plaintiff's applications were denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial. This includes recasting references in the captions from earlier decisions involving this Plaintiff.

[2] Citations to the underlying administrative record are designated as "R."

3. On February 13, 2017, ALJ Elizabeth Ebner held a video hearing at which Plaintiff—represented by counsel—and Vocational Expert Larry Underwood appeared and testified. (R. at 42-70, 15, 689.) At the time of the hearing, Plaintiff was 47 years old with a high school education. She had past relevant work experience as a cashier checker (light exertion work performed at medium level), fast food worker (light work), and companion (light work) (R. at 31, 633-34). She had no substantial gainful activity from July 12, 2013, through 2019; from April 2020 Plaintiff had substantial gainful activity as a compensated full-time caregiver for her mother (R. at 620-21).

4. The ALJ considered the case *de novo* and, on April 3, 2017, issued her first written decision denying Plaintiff's applications for benefits. After the Appeals Council denied Plaintiff's request for review, she filed her first action challenging the Commissioner's decision. This action resulted in a stipulated remand, Traci [D.] v. Comm'r, No. 18CV6373 (W.D.N.Y. Feb. 11, 2019) (Geraci, C.J.) (R. at 721).

5. On May 3, 2019, the Appeals Council remanded the action for consideration of additional evidence (R. at 724). On March 11, 2020, the ALJ held a second video hearing where vocational expert Mitchell Schmidt and Plaintiff appeared and was represented by counsel. (R. at 652-88, 617.) Considering the case *de novo*, on April 26, 2020, the ALJ rendered a new written decision denying Plaintiff's application. After the Appeals Council denied Plaintiff's request to review this second ALJ's decision, she filed the current action, challenging the Commissioner's final decision.[3] (Docket No. 1.)

6. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 12, 13.) Plaintiff filed a response on

---

[3]The ALJ's second decision of April 28, 2020, became the Commissioner's final decision on this matter by operation of 42 U.S.C. §§ 405(g), 1383(c)(3).

May 21, 2021 (Docket No. 14), at which time this Court took the Motions under advisement without oral argument. For the reasons that follow, Plaintiff's Motion is **denied**, and Defendant's Motion is **granted**.

7. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

8. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination

considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

9. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

10. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

11. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

12. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. On remand at Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity (or "SGA") from January 2019 through April 28, 2020, decision date. Plaintiff then worked as a full-time caregiver for her mother, providing services which called for movements that were "fairly extensive and physical in nature." (R. at 620-21.) To be hired for that job, Plaintiff underwent a physical examination; there, she did not complain that her joint pain would limit her ability to care for her mother (R. at 621).

13. The ALJ concluded, however, "there had been a continuous 12-month period(s) during which" Plaintiff did not engage in substantial gainful activity (R. at 621). In the original decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the July 12, 2013, onset date (R. at 17, 694). In the remand decision, the ALJ said the record did not show "SGA-level earnings in 2014, 2015, 2016, 2017, or 2018" (R. at 620; see R. at 17-18, 694-95).

14. At Step Two, the ALJ found on remand that Plaintiff has the following severe impairments: right knee advanced osteoarthritis status-post total right knee arthroplasty; degenerative joint disease of the left knee; obesity; carpal tunnel syndrome of the right upper extremity; tendinitis of the right upper extremity; borderline intellectual functioning (R. at 621). This differs from the initial findings and on remand the ALJ concluded her asthma, seizure disorder, and hypertension were deemed nonsevere (R. at 621, 622).

15. At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 621.

16. Initially, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with limitations (R. at 22-23, 699-700). On remand, the ALJ found that Plaintiff retained the RFC to perform light work with the following limitations: Plaintiff can occasionally climb ramp and stairs; can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can have no exposure to dangerous moving mechanical parts; cannot work at unprotected heights; can have only occasional exposure to pulmonary irritants, humidity, wetness, dusts, odors, fumes, and extreme cold; and is limited to simple routine tasks. After 45 minutes of standing, Plaintiff would need to sit for a minute or two without going off task or leaving the workstation. Plaintiff would be off task 5% of the workday. (R. at 625.)

17. At Step Four, the ALJ found that Plaintiff was unable to perform her past relevant work as a cashier, fast food worker, and companion. (R. at 620-21, 633-34.) At Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 635.) The ALJ found that Plaintiff had additional

limitations that impede performing light work. The ALJ then sought the opinion of the vocational expert of the occupations a hypothetical claimant could perform with the similar age, education, work experience, and RFC. The expert opined that such a claimant could work as an addresser, document preparer, and cuff folder (all sedentary jobs). The ALJ concluded that, because those sedentary jobs have more restrictions and Plaintiff could perform light work, she could perform those jobs with her RFC. (R. at 634-35.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 635.)

18. Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ did not incorporate into the revised RFC any limitations due to her carpel tunnel syndrome although deeming that condition to be a severe limitation (Docket No. 12, Pl. Memo. at 1, 16-21). Next, Plaintiff contends that the ALJ failed to give good reasons for dismissing the opinion of her treating physician, Dr. Desiree Franceschi (id. at 1, 19, 21-26). Third, Plaintiff concluded that the ALJ based the RFC on her lay interpretation of the medical evidence of record (id. at 1, 26-28). For the reasons that follow, these arguments are rejected.

19. Plaintiff argues that the ALJ found at Step Two that Plaintiff had a severe limitation for carpel tunnel and tendinitis in the right upper extremity but failed to factor those aliments in the subsequent steps (Docket No. 12, Pl. Memo. at 17-18; R. at 621). Defendant concedes that the ALJ found Plaintiff's carpel tunnel was severe (giving Plaintiff what Defendant terms the benefit of the doubt) but there was no proof of a functional limitation beyond those noted in the RFC due to the carpel tunnel syndrome (Docket No. 13, Def. Memo. at 9).

20. The ALJ considered Plaintiff's carpel tunnel but observed that her treatment history showed her symptoms were not as severe as alleged and thus did not limit her performing light work (R. at 630).

21. On January 20, 2017, Plaintiff saw Dr. Robert Meyer complaining of right arm pain. Dr. Meyer prescribed a counterforce strap, physical therapy, and a 10-pound lifting restriction at work. (R. at 605.)

22. The ALJ considered Dr. Meyer's findings for Plaintiff's claimed carpel tunnel syndrome and tendinitis (R. at 630). The ALJ concluded that Plaintiff's treatment history did not indicate that her symptoms were as severe as she claimed, with normal EMG/NCS testing in February 2017 (R. at 630, 605). Dr. Meyer did not say that the weight limitation was permanent while Plaintiff experienced symptoms for one month as of Dr. Meyer's treatment (R. at 630, 605). During a follow up examination on April 7, 2017, Dr. Meyer did not give Plaintiff a weight restriction for carrying (R. at 1086, 630).

23. The ALJ gave Dr. Meyer's January 2017 finding of the 10-pound limitation little weight because it was inconsistent with negative EMG/NCS test, conservative treatment history, Plaintiff's ability to perform basic activities, and Plaintiff's testimony that her condition/carpel tunnel has since resolved (R. at 632, 669 (testified that 10 pounds was "a comfortable weight but anything above that got a little iffy")).

24. Plaintiff then attended physical therapy and was discharged after a few months due to significant progress (R. at 630, 1118).

25. Plaintiff argues that when the ALJ did not give treating physician Dr. Franceschi's opinion controlling weight, the ALJ should have applied various factors to determine the proper weight to assign her opinion. These factors include the frequency

8

of examination and the length of treatment; evidence supporting the treating source's opinion; consistency of the opinion with the record; and other factors, Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (Docket No. 12, Pl. Memo. at 21-22).

26. Dr. Franceschi's opinion was rendered on February 22, 2017 (about one month after Dr. Meyer's weight restriction), where she found that Plaintiff could not lift more than 10 pounds (R. at 1078; see Docket No. 12, Pl. Memo. at 18).

27. The ALJ noted that Plaintiff testified that she was no longer bothered by carpel tunnel (R. at 629, 632, 678 (March 11, 2020, Hearing Tr.); see Docket No. 13, Def. Memo. at 9).

28. The ALJ had substantial evidence to conclude Plaintiff's carpel tunnel was not severe enough to affect her ability to lift. Plaintiff's carpel tunnel claim is supported only by Dr. Meyer's January 2017 opinion and Dr. Franceschi's February 2017 opinion. Dr. Franceschi's opinion predates Plaintiff's subsequent physical therapy and treatment and her apparent improvement.

29. Sedentary work involves lifting no more than 10 pounds, 20 C.F.R. §§ 404.1567(a), 416.967(a), and this is the temporary restriction Drs. Meyer and Franceschi found (R. at 605, 1077).

30. Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) on this ground is denied.

31. Dr. Franceschi also opined that Plaintiff would be off task for 30% of a workday (R. at 1076). The doctor found that Plaintiff could walk for one city block without rest or severe pain, sit for up to 60 minutes at one time and can stand for 30 minutes at one time and could stand or walk for less than 2 hours in a workday and sit for at least 6

hours (R. at 1076, 1077). Dr. Franceschi observed that Plaintiff needed unscheduled breaks during the day and needed to get up and walk every 15 minutes for 15 minutes and would need to lie down during breaks (R. at 1077). Plaintiff needs a cane or assistive device while standing or walking (R. at 1077). The doctor opined that Plaintiff could rarely lift less than 10 pounds rarely and never lift more than 10 pounds (R. at 1078). Due to her carpal tunnel syndrome, Plaintiff had 50% of the use of her right hand and arm for grasping, turning, twisting objects, fine manipulations, and overhead reaching (R. at 1078). Dr. Franceschi found Plaintiff could rarely twist, stoop, or bend, and could never crouch, squat, climb ladders or stairs (R. at 1078). (R. at 632, ALJ's remand opinion; Docket No. 12, Pl. Memo. at 10-11.)

32. The ALJ, however, gave little weight to Dr. Franceschi's opinion (R. at 632). The ALJ observed Dr. Franceschi's findings of limited range of motion in Plaintiff's right arm were not supported by clinical imaging or diagnostic studies. The ALJ also found Dr. Franceschi's opinion was inconsistent with findings elsewhere in the record that Plaintiff had a normal gait, full strength, intact sensation, and normal range of motion. (R. at 632, citing R. at 1075, 1285, 875 (August 10, 2016, noting limping gait), 1049 (January 6, 2016, noting normal gait), 1085 (April 7, 2017, noting full range of motion for right knee while discomfort in fingers and wrist), 1088 (February 16, 2018, ambulates without cane and good range of motion and strength in her right knee, with imaging of right knee), 1292 (May 8, 2017, no mention of gait or strength); see Docket No. 13, Def. Memo. at 8.)

33. Defendant notes that the ALJ highlighted Plaintiff's February 2017 electrodiagnostic study conducted by Dr. Justin Rymanowski of Ontario Neurology

Associates that was normal, "without evidence of a right median or ulnar neuropathy" (Docket No. 13, Def. Memo. at 9-10; R. at 606, 632). Dr. Rymanowski stated that Plaintiff's symptoms "seem primarily musculoskeletal, but there may also be a component of median nerve irritation below the threshold testing" (R. at 606).

34. Both sides cite to portions of the record showing Plaintiff's gait to support their opposing contentions. Plaintiff points to findings of abnormal gait (Docket No. 12, Pl. Memo. at 24, citing R. at 544, 577, 586, 875, 1302) but Defendant shows normal findings (Docket No. 13, Def. Memo. at 10, citing R. at 606, 875 (Aug. 10, 2016, limping gait, but "extremities otherwise negative"), 1050, 1085, 1292) as conceded by Plaintiff (Docket No. 12, Pl. Memo. at 24). This leads to weighing of evidence, the role of the ALJ, see 20 C.F.R. §§ 404.1527(c), 416.927(c); judicial review, however, requires assessing whether substantial evidence supports the ALJ's findings. The ALJ assessment is supported by reports of Plaintiff's normal gait findings.

35. Plaintiff's Motion (Docket No. 12) on this ground also is denied.

36. Plaintiff next argues that the ALJ improperly used her lay interpretation of the medical evidence after rejecting every functional opinion of record except Dr. Meyer's (Docket No. 12, Pl. Memo. at 27-28). On June 9, 2016, Dr. Meyer opined that Plaintiff was able with some limitations to walk, stand, lift, carry, push, pull, bend, squat, and climb stairs (R. at 601). Dr. Meyer also noted that Plaintiff required a sit/stand option (R. at 601).

37. Plaintiff argues that Dr. Meyer's opinion only addressed her right knee and not her other conditions (Docket No. 12, Pl. Memo. at 27-28). Upon this limited medical

opinion evidence of record, Plaintiff concludes that the ALJ formulated the RFC "out of whole cloth" (id. at 28).

38. Defendant responds that the ALJ did not need to base the RFC on a particular medical opinion. Under 20 C.F.R. §§ 404.1520(e), 416.920(e), 404.1545(a)(3), 416.945(a)(3), the ALJ may assess the RFC based on all relevant medical and other evidence of record. (Docket No. 13, Def. Memo. at 7.)

39. Defendant emphasizes that Plaintiff bears the burden of proving her RFC (id. at 8), Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009). Defendant concludes that the ALJ relied upon "a variety of evidence" finding Plaintiff could perform light work (id.).

40. The ALJ supported the RFC on giving some weight to Dr. Meyer's June and August 2016 opinions (R. at 632, 627, 628, 555, 601, 612-13, 586, 604) and the longitudinal evidence of record focusing on Plaintiff's knee and her gait (R. at 633, 626-28).

41. The ALJ also relied upon the consultative examiner Dr. Harbinder Toor's opinion (R. at 629, 630, 1122-24). Dr. Toor noted Plaintiff had grip strength 5/5 bilaterally (R. at 630, 1124).

42. The ALJ thus did not rely upon her lay opinion in finding the RFC. Plaintiff has not shown lay findings or interpretations of this record.

43. Plaintiff's Motion (Docket No. 12) is denied on this ground.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:      March 23, 2022
               Buffalo, New York

                                                <u>s/William M. Skretny</u>
                                                WILLIAM M. SKRETNY
                                                United States District Judge